Judge Benjamin H. Settle

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RANDALL TAUFETE'E,

Defendant.

NO. CR23-5000-02 BHS

UNITED STATES' SENTENCING
MEMORANDUM

Randall Taufete'e appears before this Court for sentencing in the above-captioned case pursuant to his guilty plea on March 15, 2024, to Arson, in violation of Title 18, United States Code, Sections 844(i) and 2, and Attempted Burglary of a Federally Insured Credit Union in violation of Title 18, United States Code, Sections 2113 and 2. The United States respectfully recommends the Court impose a custodial sentence of 92 months (the low end of the Guidelines) followed by a three-year term of supervised release; order restitution (joint and several) in the amount of $198,018.85; and order payment of the mandatory fee of $200.00. The recommended 92-month sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

## I.    BACKGROUND

**A.    Offense Conduct**

On October 24, 2022, at 5:54AM, Tumwater Fire Department (TFD) personnel responded to a fire alarm activation at an O Bee Credit Union branch in Tumwater, Washington. Presentence Report (PSR) ¶ 8. The first firefighters to arrive saw flames between one and two feet tall coming from the top of the ATM, which was embedded in an exterior wall of the credit union. *Id*. Firefighters suppressed the flames with fire extinguishers and hose lines. PSR ¶ 9. Firefighters also entered the building and found smoke in the interior of the credit union. *Id*. Firefighters noticed additional damage to the building and requested Tumwater Police Department (TPD) officers respond to investigate a possible break-in attempt. *Id*.

Responding TPD officers observed fire damage (char marks) and other damage (flame-based cuts and pry marks) to the ATM, the bank deposit box (also embedded in the exterior wall of the credit union), the drive-thru teller window, and an exterior door. PSR ¶ 10. The damage to the ATM and night deposit box was consistent with an attempt to access the cash (and checks) inside each; the damage to the teller window and exterior door was consistent with an attempt to get inside the credit union. *Id*.

Investigators obtained the surveillance footage from several exterior cameras at the credit union. PSR ¶ 11. On the footage, they could see that at approximately 12:46AM, a Subaru station wagon pulled into the credit union and parked well away from the building in the northeast corner of the parking lot. *Id*. Then, between 12:57AM and 5:11AM, Randall Taufete'e and his co-defendant, Brandon Collado, used hand tools (e.g., a pry bar), power tools (e.g., an electric saw), and fire (via an oxyacetylene torch system)[1] on the ATM, the deposit box, the teller window, and the exterior door. *Id*. Taufete'e was the one using the oxyacetylene torch. *Id*. Collado had a scanner/radio that

---

[1] The ATF's Fire Research Laboratory has opined that oxyacetylene torch systems produce fire in the form of a flame during operation.

United States' Sentencing Memorandum - 2
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

was programmed to scan the local police dispatch channels. *Id*.[2] On at least two occasions, Taufete'e and Collado left the area in the Subaru and returned with additional tools. *Id*.

Shortly after 5:00AM, the ATM started smoking heavily. Taufete'e and Collado walked around the corner briefly, then ran in the direction of their Subaru. The surveillance then showed another vehicle – an apparent customer – approaching the ATM. This customer called 911 to report the fire. The total cost for the damage to O Bee Credit Union was $198,018.85. PSR ¶ 13.

Investigators began working to identify the two suspects shown in the surveillance video. Three days later, TPD officers were dispatched to an apartment building in Tumwater upon a report of a gunshot or explosion in the area. PSR ¶¶ 13,41. When they arrived, Taufete'e got out of the passenger seat of a Subaru station wagon (officers later determined Collado was the driver). PSR ¶ 41. Taufete'e told officers he hadn't heard anything. *Id*. Taufete'e got back into the car, which began to drive away as officers headed to the back of the apartment building. *Id*. Taufete'e then got out of the car and told officers not to go behind the building because his dog was there. *Id*. Officers ignored Taufete'e and went to the back of the building – there was no dog but there was a large, mesh-sided camping tent containing a large safe. *Id*. Officers could see the safe door appeared to have been cut with a torch and either pried or blown open. *Id*. Welding tools and torches were strewn about. *Id*.

When officers went back to the front of the apartment building, the Subaru was now unoccupied. *Id*. An officer looked through the windows and saw a pistol on the passenger floorboard where Taufete'e had been sitting. *Id*. TPD officers (who knew Taufete'e from prior contacts and knew he was a prohibited person) arrested Taufete'e on

---

[2] The Presentence Report contains a typographical error in this paragraph – it was Collado who held the scanner, not Taufete'e.

United States' Sentencing Memorandum - 3
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a weapons violation. *Id*. The pistol turned out to be loaded with five rounds, including one in the chamber. Taufete'e was booked on his weapons violation and quickly pled guilty. *Id*. He was sentenced to serve 27.75 months in state prison. *Id*.

On October 30, TPD detectives investigating the arson went back to the Tumwater apartment building and impounded the Subaru. During a later search, they found numerous hand tools, gas tanks for the oxyacetylene torch system, clothing that had been worn during the burglary, and Collado's Social Security card.

**B.    Procedural History**

In late November 2022, agents interviewed Taufete'e about the fire and attempted break-in at the O Bee Credit Union; Taufete'e was in state prison on the weapons offense described above. Agents walked Taufete'e through what had happened (as captured by the surveillance video at the bank), but Taufete'e said it made "no sense" and had no idea what agents were talking about. He did acknowledge knowing Collado.

Taufete'e and Collado were charged by Complaint on December 20, 2022. Dkt. 1. A grand jury indicted them on January 4, 2023, on charges of Arson, Attempted Burglary of a Federally Insured Credit Union, and Use of Fire to Commit a Felony. Dkt. 3. Agents arrested Collado the following week. He pled guilty to Attempted Burglary of a Federally Insured Credit Union and was sentenced to a 30-month term of imprisonment. Dkt 73.

Taufete'e is before the Court on a writ issued to the Washington Department of Corrections. Dkts. 21, 37. Sentencing is set for June 24, 2024.

## II.    SENTENCING GUIDELINES CALCULATIONS

**A.    Offense Level**

The Arson and Attempted Burglary of a Federal Credit Union counts group for purposes of the Guidelines calculations, because they involve the same victim and the same transaction. PSR ¶ 17; USSG §§ D1.1, 3D1.2. Arson carries the higher, undisputed base offense level (24), applicable because the offense involved the attempted destruction of a place of public use. PSR ¶ 18; USSG §2K1.4(a)(1).

United States' Sentencing Memorandum - 4
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The parties had agreed to a three-level enhancement for the loss amount under USSG §2B2.1(b)(2)(D). PSR ¶ 19 n.2. In further discussions with the Probation Office, the United States understands that recommendation to have been made in error and is no longer seeking that enhancement.

However, the United States agrees with the Probation Office that a two-level enhancement under USSG §3B1.3 applies for the use of a special skill. PSR ¶ 21. Starting in April 2018, and while in DOC custody for a prior conviction, Taufete'e attended hundreds of hours of welding training. *Id*. Taufete'e chose a particular welding skill – the use of an oxyacetylene torch – to break into the O Bee Credit Union. This is a specialized skill that the average member of the public does not have and one for which Taufete'e obtained training and education. By way of example, the Lake Washington Institute of Technology (in Kirkland) offers a "Welding Introduction, Certificate of Completion" program to prepare students for entry-level positions. *See https://catalog.lwtech.edu/preview_program.php?catoid=15&poid=3692&returnto=829*. The first course in the required sequence is "WELD 101 Oxy-Acetylene Cutting and Welding," which consists of 100 total hours of instruction (20 theory/lecture hours, 80 guided practice hours). *Id*. Likewise, Bates Technical College (in Tacoma) offers a "Welder I Certificate of Training" program. *See https://www.batestech.edu/course-details/?guid=04010DD4-9617-4EBE-8C30-1D35A619E888&program=Welding*. The second course in the required sequence is "WELD 104 – Oxyacetylene Cutting," and takes a full quarter to complete. *Id*.

It does not matter that Taufete'e was unsuccessful in his attempt. His specialized training made it easier to use the oxyacetylene torch in his commission of the crimes. *See, e.g., US v Foreman*, 926 F.2d 792, 796 (9th Cir. 1990) (enhancement under 3B1.3 applied where abuse of trust made it easier to commit the offense, even though no significant effect on success of effort). Taufete'e used a skill beyond the ken of the

United States' Sentencing Memorandum - 5
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

average person, one that requires specialized skill and training, and one which justifies application of the two-level enhancement.

The Court should find an adjusted offense level of 26 as calculated by the Probation Office. PSR ¶ 26. With three levels off for acceptance of responsibility, the total offense level is 23. PSR ¶ 27.

**B.     Criminal History Category and Guidelines Range**

Taufete'e has an extensive criminal history as an adult, with more than one dozen convictions. PSR ¶¶ 29-41. Even though some of those convictions do not score, Taufete'e still has 21 points and is in Criminal History Category VI. PSR ¶ 43. His convictions run the gamut, from theft to assault, from robbery to firearms possession. There is an outstanding warrant for him in Florida, for burglary. PSR ¶ 44.

With a total offense level of 23 and a criminal history category VI, the advisory guidelines range is 92 to 115 months.

**III.     FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully requests that the Court sentence Taufete'e at the low end of the advisory range, i.e., 92 months of confinement, followed by a three-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). It is also sufficient, but not greater than necessary, to achieve these goals. A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

**A.     Nature and Circumstances, and Seriousness of the Offenses**

Taufete'e's offenses caused nearly $200,000 in damage to the O Bee Credit Union. Although no one was injured and even though the heist was ultimately unsuccessful, this was a serious crime. It also represents a notable escalation in

United States' Sentencing Memorandum - 6
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Taufete'e's criminal conduct. Although Taufete'e has stolen before – merchandise from Walmart on at least three occasions (¶¶ 35 – 38), a car (¶ 39) – none of those thefts had any element of destruction to them. In contrast, the fire Taufete'e started at the credit union could have spread to the entire building. The bank deposit box – embedded in the exterior wall – was cut open at the bottom and peeled back, leaving the internal compartment exposed. The metal around the cut was charred black and had melted.



United States' Sentencing Memorandum - 7
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2

The teller window had a vertical cut between one-and-a-half and two feet high; there were char marks on the glass.




The door to the "riser room" – essentially the control center for a building's fire sprinkler system – had pry and char marks near the lock and door handle.



United States' Sentencing Memorandum - 8
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The ATM's cover had been removed, leaving the inner machine exposed. It was heavily damaged; the screen was burnt, about half the wooden framing holding the ATM in place was removed, and wires were exposed.



There was also smoke damage to the interior of the credit union, which had to close for a short time.

Taufete'e spent hours trying to break into the credit union, attempting to get in through multiple points of entry. He, not Collado, used the torch and set fire to the ATM. These were serious, significant offenses that warrant a serious, significant sentence.

United States' Sentencing Memorandum - 9
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      History and Characteristics of the Defendant**

The United States acknowledges Taufete'e's troubled childhood and drug addiction. Taufete'e has been through a court-ordered inpatient program followed by intensive outpatient treatment. PSR ¶ 67. There is no information about how long he maintained sobriety before relapsing, but it does not appear to have been long. He participated in a three- or four-month treatment program while in DOC custody. *Id*. Any post-release sobriety again appears to have been short-lived.

**C.      Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

Taufete'e's longest period of incarceration to date was a 34-month sentence imposed in 2017. PSR ¶ 38. This appears to have had little deterrent effect, as reflected in his comment to police after leading them on a high-speed chase: "Governor Inslee let me out of prison early and I wanted to have some fun." ¶ 40. "Fun" to Taufete'e in that context included driving on the wrong side of the road, driving through multiple stop signs, reaching speeds of 85 miles per hour in a residential neighborhood, speeding at 120 miles per hour in a 35-miles-per-hour zone, and, when police finally stopped him, refusing to get out of the car until officers used a K9. *Id*. This, coupled with Taufete'e's persistent reoffending over the years, shows that he has little respect for the law. No prior sentence deterred Taufete'e from committing additional crimes. A 92-month sentence of imprisonment reflects just punishment for his offenses here and – hopefully – provides the respect for the law and deterrence previous state prison terms did not.

**D.      Need to Protect the Public from Further Crimes, the Kinds of Sentences Available, and Any Necessary Educational or Vocational Training or Other Special Care**

A 92-month term of imprisonment protects the public from further crimes. The United States does not know of any necessary educational or vocational training

United States' Sentencing Memorandum - 10
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Taufete'e needs. It appears he would benefit from mental health therapy and substance abuse treatment.

**E.     Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

Defendants similarly situated to Taufete'e in terms of offense level and criminal history are sentenced on average to 90 months. *See* PSR at p. 20. The recommended 92-month sentence is at the low end of Taufete'e's Guidelines range. PSR ¶ 77.

Also, Taufete'e deserves a much lengthier sentence than his co-defendant, Collado, who was sentenced to 30 months. First, Taufete'e, rather than Collado, appeared to be the mastermind of this offense. Taufete'e had the training and experience to use the welding torch. Taufete'e caused most of the damage while Collado served mainly as a lookout. Second, Collado was convicted only of attempted larceny. Taufete'e was convicted of attempted larceny and the far more serious offense of arson. Lastly, Taufete'e has a far lengthier criminal history involving over 21 criminal history points. Collado had only 12 points. Dkt. 71.

## IV.     RESTITUTION

Restitution is mandatory under Title 18, United States Code, Section 3663A. Part of Taufete'e's plea included his acknowledgement of this joint and several restitution obligation and agreement to cooperate in paying it. Dkt. 79 at pp.8-10. The amount of loss to O Bee Credit Union is $198,018.85; because the loss amount was covered by O Bee's insurance carrier, CO/Action, restitution is due to the insurance carrier.

//
//
//
//
//
//

United States' Sentencing Memorandum - 11
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### V.   CONCLUSION

For the reasons set forth above, the United States respectfully recommends 92 months of imprisonment as sufficient but not greater than necessary to achieve the goals of sentencing. The term of imprisonment should be followed by a three-year term of supervised release, an order for restitution (joint and several) in the amount of $198,018.85, and payment of the mandatory fee of $200.00. The United States moves to dismiss Count 3 of the Indictment.

DATED this 13th day of June 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney


*s/Marci L. Ellsworth*
MARCI L. ELLSWORTH
ZACH W. DILLON
Assistant United States Attorneys
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Phone: 253-428-3819
Email: Marci.Ellsworth@usdoj.gov

United States' Sentencing Memorandum - 12
*United States v. Taufete'e*, CR23-5000-02 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800